IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| REDALE BENTON-FLORES, <br><br> Plaintiff, <br><br> v. <br><br> SECRETARY OF THE DEPARTMENT OF DEFENSE, <br><br> Defendant. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 1:22-cv-00309-KMW-SAK <br><br> **Memorandum Opinion** |

**ReDale Benton-Flores**

*Plaintiff, pro se*

**Heather C. Costanzo, Esq.**
DOJ-USAO, DISTRICT OF NEW JERSEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

*Counsel for the Secretary of the U.S. Department of Defense*

**WILLIAMS, District Judge:**

I. **INTRODUCTION**

Before the Court is the Motion for Summary Judgment brought by the defendant, the Secretary of the United States Department of Defense (the "DoD" or "Defendant"), pursuant to Federal Rule of Civil Procedure 56. Defendant's Motion has been opposed by the plaintiff, ReDale Benton-Flores ("Plaintiff"), who proceeds in this action *pro se* and *in forma pauperis*. For the reasons set forth below, the Department's Motion is granted.

1

II.   **FACTUAL BACKGROUND**

Plaintiff is a former employee of the Department of Defense Education Activity ("DoDEA")—the federal school system tasked with educating the children of active-duty military and DoD civilian families. (ECF No. 64-1 ¶¶ 16–20) Presently, it operates 161 schools in 11 foreign countries and 7 states, as well as Guam and Puerto Rico. (*Id.*) Over the past forty years, Plaintiff has intermittently worked for the DoDEA, first as a teaching assistant (1987–2001) and later as a preschool teacher (2011–2012). In this case, Plaintiff alleges that the DoDEA did not interview or hire her for a teaching position in 2017, and that the agency's failure to do so was in retaliation for the number of Equal Employment Opportunity ("EEO") complaints she had filed in the years prior.

A.   **Employment History**

Plaintiff was first employed by the DoDEA as a teaching assistant at an elementary school in Germany in 1987. (*Id.* ¶ 21.) By 1999, she was working at Kadena Elementary School in Okinawa, Japan. (*Id.* ¶ 22.) However, the DoDEA terminated Plaintiff's employment in February 2001 for, among other reasons, failing to timely report to Okinawa as ordered. (*Id.* ¶ 23; ECF No. 63-1 at 29–30.) Plaintiff subsequently filed an EEO complaint with the agency, alleging discriminatory discharge on the basis of race ("First EEO Complaint"). (ECF No. 64-1 ¶ 24.) This matter was settled in 2004, with the DoDEA issuing a letter of recommendation advising prospective employers that Plaintiff had "resigned from her position in February 2001," and that she was "fully eligible for rehire" by the agency. (*Id.* ¶¶ 25–26.)

Several years later, Plaintiff sought reemployment with the DoDEA but was unsuccessful. (*Id.* ¶ 27.) In 2009, she filed another EEO complaint with the agency ("Second EEO Complaint"), alleging that her applications were being obstructed and that she was being denied employment

despite numerous, successful interviews. (*Id.*) She claimed that Doug Kelsey, the DoDEA's former area superintendent in Okinawa, was deliberately sabotaging her attempts to be reemployed, in retaliation for her First EEO Complaint. (*Id.* ¶¶ 28–29.) Plaintiff's claims were later settled in 2001. (*Id.* ¶ 30.)

In August 2011, Plaintiff was rehired by the DoDEA as a preschool teacher for children with disabilities at Aviano Elementary School in Italy. (*Id.* ¶ 32.) However, she was terminated on June 15, 2012, during her probationary period. (*Id.*) The DoDEA terminated Plaintiff for failing to follow procedures and assessments for special education students, despite prior counseling, and because she had strained relationships with school staff and service providers. (*Id.* ¶ 33.) By that time, Plaintiff had already filed another EEO complaint ("Third EEO Complaint"), alleging discrimination based on age, race, and color, as well as retaliation for her prior EEO complaints. (*Id.* ¶ 34.) Following an investigation, the DoDEA issued a Final Agency Decision ("FAD") on November 22, 2017, finding no evidence of discrimination or retaliation. (*Id.* ¶ 35.) The U.S. Equal Employment Opportunity Commission ("EEOC") affirmed the FAD on March 22, 2018, and denied Plaintiff's subsequent request for reconsideration. (*Id.* ¶¶ 36–38.)

B.  **The Instant Action**

Plaintiff's present claims arise from another EEO complaint she filed in 2017 ("Fourth Amended Complaint"), after the DoDEA did not interview or hire her for an English teaching position at Edgren High School in Misawa, Japan. At this time, Plaintiff had an open application in the DoDEA's online Employment Application System ("EAS") for English and speech teaching positions in foreign countries. (*Id.* ¶ 52.) By August 2017, the DoDEA sought to quickly fill a vacant English teaching position at Edgren High.

On August 17, 2017, DoDEA Human Resources contacted Dr. Ronald Knight with instructions to fill the vacancy prior to the imminently approaching school year. (*Id.* ¶ 41.) Dr. Knight, who had been appointed as principal of Edgren High just ten days prior, was given a referral list containing the names of 36 applicants, including Plaintiff, all of whom had passed an automated hiring evaluation through EAS. (*Id.*) Assisted by Dr. Rebecca Villagomez, the new assistant principal, Dr. Knight was required to select three candidates from the list and to provide their names to agency headquarters. (*Id.* ¶¶ 43–44, 51.) While the DoDEA did not require Dr. Knight to interview every person on the referral list, it did require him to interview those selected as finalists. (*Id.* ¶ 48.)

The next day, Dr. Knight began identifying interested candidates from the referral list, who were then scheduled to participate in telephone interviews over a two-day period the following week. (*Id.* ¶¶ 56–58.) Plaintiff's interview was scheduled for August 25, 2017, at 10:30 a.m. (JST). (*Id.* ¶ 60.) At the time, Plaintiff was residing in California, but separately confirmed the time difference with the school. (*Id.* ¶¶ 61–62.) Although Dr. Knight was aware that Plaintiff had been terminated from her previous position, he did not consider it disqualifying, as he had previously hired individuals who had been removed from federal service during their probationary periods. (*Id.* ¶ 58.) However, neither Dr. Knight nor Dr. Villagomez had any prior knowledge of Plaintiff's EEO history. (*Id.* ¶¶ 83, 86.)

On the day of her interview, Drs. Knight and Villagomez called Plaintiff's cellphone at the scheduled time, but the interview could not proceed due to a poor connection. (*Id.* ¶ 64.) Plaintiff estimated that she remained on the phone between three and ten minutes after answering, saying "Hello, hello, this is me, ReDale, ReDale Benton-Flores," after which the call ended. (*Id.* ¶ 65.) A

secretary later emailed Plaintiff, apologizing for the delay and indicating that her interview would be rescheduled for another time. (*Id.* ¶ 67.)

Plaintiff was not the only candidate whose interview was affected by poor phone connectivity. Indeed, Drs. Knights and Villagomez experienced similar issues with at least four other candidates. (*Id.* ¶¶ 68–69.) However, due to time constraints, only three of the affected candidates were rescheduled; Plaintiff's interview was not rescheduled. (*Id.* ¶¶ 70–71.) Based on the interviews they were able to conduct, they determined that they had sufficient information to identify their top three selections. (*Id.* ¶ 71.) Their first choice was an employee who was already working for DoDEA at the time, thus making her an optimal candidate because she was already onboarded with the agency. (*Id.* ¶¶ 50, 72.) However, that candidate already accepted another position, and so the second-place candidate was ultimately hired because Drs. Knight and Villagomez found him to be "very knowledgeable" and "a good fit." (*Id.* ¶¶ 75–78.) Dr. Knight later advised Plaintiff via email that another candidate was selected for the position and that they did not intend to continue with any further interviews. (*Id.* ¶¶ 81–82.)

### III.    PROCEDURAL HISTORY

On November 14, 2017, Plaintiff filed her Fourth EEO Complaint, alleging discrimination on the basis of race, sex, age, and disability, as well as retaliation for her prior EEO activity in the years prior. (ECF No. 1 at 7–10.) She alleged that Drs. Knight and Villagomez feigned a phone connection in order to avoid interviewing or hiring her, and that the DoDEA has placed her on an agency-wide "do-not-hire" list. (*Id.* at 9.) A subsequent DoDEA investigation found no evidence of discrimination or retaliation, leading Plaintiff to request a hearing before the EEOC. (*Id.*) The administrative law judge ("ALJ") allowed for additional discovery, but Plaintiff declined. (*Id.*) On October 22, 2019, the ALJ granted summary judgment against Plaintiff, finding that she did not

adduce sufficient evidence to prove her claims. (*Id.*) Plaintiff subsequently sought reconsideration from the EEOC, which affirmed the ALJ's decision. (*Id.* at 9–10.)

Plaintiff filed her Complaint in this Court on January 24, 2022, along with an *in forma pauperis* application, which was initially denied for improper form. (ECF Nos. 1, 4, 6.) Plaintiff subsequently submitted a proper application, which the Court granted on February 23, 2022. (ECF Nos. 7–9.) Upon screening the Complaint under 28 U.S.C. § 1915(e)(2), the Court found that Plaintiff had failed to allege sufficient factual matter necessary to state claims for discrimination or retaliation.[1] (ECF No. 12.) Though the Court dismissed Plaintiff's Complaint, it did so without prejudice and granted her leave to amend. (ECF No. 13.)

Rather than amend her Complaint, Plaintiff filed a Notice of Appeal on August 22, 2022. (ECF No. 14.) On December 12, 2022, the U.S. Court of Appeals for the Third Circuit dismissed Plaintiff's appeal for lack of appellate jurisdiction, but instructed this Court to construe her Notice of Appeal as an amended complaint. (ECF No. 16.) This case was reopened on February 2, 2023. (ECF No. 19.)

On May 15, 2023, the Court examined Plaintiff's Notice of Appeal, construed it as an amended pleading, and found that the allegations sufficiently established claims for retaliation. (ECF No. 20.) The DoD answered the amended complaint on September 25, 2023. (ECF No. 25.) At the close of discovery, the DoD filed the instant Motion for Summary Judgment, which Plaintiff has opposed. (ECF Nos. 64, 66, 70, 74.) The DoD's Motion is thus ripe for disposition.

---

[1] The Court construed Plaintiff's initial complaint as alleging claims for discrimination on the basis of race, sex, age, and disability, as well as for retaliation for her prior EEO activity. *See Benton-Flores v. Austin*, No. 22-309, 2022 WL 2903340 (D.N.J. July 22, 2022). However, since the filing of her amended complaint, Plaintiff has made clear that she is only asserting claims for retaliation, specifically for failure-to-hire and failure-to-interview. (ECF No. 63-1 at 85–86.)

IV.     **LEGAL STANDARD**

A court may grant summary judgment when the materials of record "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If satisfied, the burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (internal quotation marks omitted) (emphasis in original). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements[.]'" *Trap Rock Indus., Inc. v. local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving

party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## V.   DISCUSSION

Plaintiff has asserted claims for retaliation under Title VII of the Civil Rights Act of 1964, as well as the Age Discrimination in Employment Act ("ADEA").[2] Plaintiff has alleged two theories of retaliation. First, she raises a failure-to-interview claim, alleging that Drs. Knight and Villagomez never intended to interview her and that they had, in fact, faked a bad phone connection to avoid doing so. Second, she asserts a failure-to-hire claim, alleging that the DoDEA has placed her on a "do-not-hire" list and refuses to rehire her. In its Motion, the DoD argues that Plaintiff's claims fail because they remain speculative and unsupported by evidence; the Court agrees.

Both Title VII and the ADEA prohibit discrimination in the federal sector. Title VII provides: "All personnel actions affecting [federal] employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Similarly, the ADEA provides: "All personnel actions affecting [federal] employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

Although neither of these provisions specifically references retaliation, they have been interpreted to allow federal employees to bring retaliation claims against their agency employers. *See Komis v. Sec'y of United States Dep't of Lab.*, 918 F.3d 289, 294 (3d Cir. 2019) (interpreting Title VII); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (interpreting ADEA). The reasoning

---

[2] Upon initial review of Plaintiff's amended complaint, the Court did not recognize a retaliation claim under the ADEA, identifying only those brought under Title VII. The DoD has taken the position that the Court granted Plaintiff leave to proceed *in forma pauperis* solely on her Title VII claims, but that is not entirely accurate. Upon closer examination, the Court acknowledges that Plaintiff has asserted retaliation claims under both the ADEA and Title VII. While the DoD has moved for summary judgment only on the Title VII claims, the Court will address all of Plaintiff's retaliation claims together, as the legal analysis is the same.

follows that where a federal employee experiences retaliation for complaining about discrimination on the basis of race, color, religion, sex, or national-original discrimination, the employee is, in fact, suffering a form of discrimination based on those same protected traits. *See Kocher v. Sec'y United States Dep't of Veterans Affs.*, No. 23-1108, 2023 WL 8469762, at *1 (3d Cir. Dec. 7, 2023) (citing *Babb v. Wilkie*, 589 U.S. 399, 402 (2020)); *see also Gomez-Perez*, 553 U.S. at 488. Thus, both Title VII and the ADEA make it unlawful for a federal government employer to take reprisals against its employees for their prior EEO activity. *See id.*

Where, as here, a plaintiff lacks direct evidence of retaliation, courts analyze claims for the same under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green. See* 411 U.S. 792 (1973); *see also Finizie v. Sec'y United States Dep't of Veterans Affs.*, No. 23-2594, 2024 WL 3887725, at *3 (3d Cir. Aug. 21, 2024). First, the plaintiff must establish a *prima facie* case of retaliation by demonstrating (1) that she engaged in a statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse action. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). If the plaintiff is successful, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the alleged adverse employment action. *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). If the defendant does so, the burden shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false [*i.e.*, a pretext], and that retaliation was the real reason for the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (internal quotation marks omitted).

Turning first to Plaintiff's failure-to-hire claim, the Court finds that it fails at the *prima facie* stage because there is no evidence of the adverse employment action she alleges. As

previously indicated, Plaintiff claims that the DoD has placed her on a "do-not-hire" list in retaliation for her prior EEO activity. Courts have construed allegations of blacklisting as a form of retaliatory failure-to-hire. *See, e.g.*, *Parker v. Philadelphia Newspapers, Inc.*, 322 F. Supp. 2d 624, 628 (E.D. Pa. 2004) (analyzing claim based on alleged placement of plaintiff's name on an office "do-not-hire" list). The problem here, however, is that there is no evidence in the record to suggest that this list even exists. Drs. Knight and Villagomez are unaware of such a list, and the DoDEA's Human Resources Chief for the Pacific Region has testified unequivocally that it does not exist. (ECF No. 64-1 ¶¶ 93–97.) Despite the lack of evidence, Plaintiff continues to insist that it is real, but explains that it simply has not been discovered. Yet, Plaintiff herself has never seen such a list. Nor has she offered evidence showing that anyone else has created or seen this list. Therefore, Plaintiff's allegations concerning any do-not-hire list are pure speculation. *See Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

With respect to Plaintiff's failure-to-interview theory, this claim also fails at the *prima facie* stage because there is nothing connecting the DoDEA's failure to interview Plaintiff with her prior EEO activity. As an initial matter, failure-to-interview claims are really just a species of failure-to-hire. *See, e.g.*, *Sarmiento v. Montclair State Univ.*, 513 F. Supp. 2d 72 (D.N.J. 2007), *aff'd*, 285 F. App'x. 905 (3d Cir. 2008). To succeed, Plaintiff must establish that, but for her prior EEO activity, Drs. Knight and Villagomez would have interviewed her. *See Kocher*, 2023 WL 8469762, at *2 (internal quotation marks omitted). Staving off summary judgment consequently requires Plaintiff to show a genuine, material dispute about whether her prior EEO activity caused them to not interview her. *See id.*

At the *prima facie* stage, a plaintiff can generally establish a causal link between her protected activity and the adverse action by showing one of the following:

> (1) a "temporal proximity" between the protected activity and adverse action that is "unusually suggestive of retaliatory motive," (2) a "pattern of antagonism" towards her after she filed her [EEOC] complaint, (3) inconsistencies in the employer's explanations for the adverse action, or (4) other evidence in the record as a whole from which a "reasonable factfinder" could otherwise infer causation.

*Giuseffi v. Sec'y United States Dep't of Homeland Sec.*, 810 F. App'x 96, 99 (3d Cir. 2020) (quoting *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259–60 (3d Cir. 2017)). Here, Plaintiff cannot show causation under any of these theories.

First, the temporal proximity between Plaintiff's prior EEO activity and the agency's failure to interview her is not suggestive of retaliatory motive. Plaintiff's prior EEO complaints were filed in 2001, 2009, and 2012—five or more years before DoDEA declined to reschedule her interview in 2017. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding *prima facie* causation was shown where employer's knowledge of protected activity was "very close" in time to the adverse action). But more critically, neither Dr. Knight nor Dr. Villagomez even knew about Plaintiff's EEO complaints at the time they were conducting interviews. (ECF No. 64-1 ¶¶ 83–86.) In fact, Plaintiff is unsure if anyone at Edgren High knew about her EEO history. (ECF No. 63-1 at 84–85.) The only thing Plaintiff has offered to support her failure-to-interview claim is her unsubstantiated belief that "someone at HQ got to [Drs. Knight and Villagomez] and said . . . she was . . . fired during the probationary period and she's previously sued—sued us, so don't touch that, don't go there." (ECF No. 63-1 at 123:10–9.) However, Drs. Knight and Villagomez have both confirmed that was not the case, and there is nothing in the record to suggest anything to the contrary. (ECF No. 64-1 ¶¶ 86–87.)

The record likewise does not evince any pattern of antagonism. In her Opposition, Plaintiff largely recycles allegations and evidence from her Second EEO Complaint. In particular, Plaintiff

11

points out that in 2009, there was a note in her personnel file instructing prospective hiring officials to contact Doug Kelsey before reemploying her. As she did then, Plaintiff interprets this note as evidence that years ago, Mr. Kelsey was sabotaging her efforts to be reemployed by the DoDEA. She further claims that every time she was either interviewed or hired for a position at DoDEA in the past, Mr. Kelsey was effectively lying in wait to make sure that she "never worked again" for the agency. (ECF No. 63-1 at 25–26.) But these allegations are as speculative as they are irrelevant. Plaintiff has conceded that this note has long been removed from her file, and further acknowledges that Mr. Kelsey retired from the DoDEA years ago. There is simply no evidence to suggest that Mr. Kelsey, or any other DoDEA decisionmaker, acted antagonistically toward her 2017 application. *See Paradoa v. Philadelphia Hous. Auth.*, 610 F. App'x 163, 166 (3d Cir. 2015) (reiterating that a plaintiff's "gut feelings" are not a "substitute for actual evidence" of retaliation).

Plaintiff has also not pointed to any inconsistencies in the reasons given for why she was not interviewed. Since 2017, Drs. Knight and Villagomez have repeatedly and consistently explained that Plaintiff's interview did not proceed due to a poor phone connection, and that she was not rescheduled due to time and scheduling constraints. The record further demonstrates that Plaintiff was not the only candidate whose interview was hindered by the poor connectivity. Likewise, Plaintiff was not the only affected candidate whose interview was not rescheduled. Still, she insists, without any evidentiary support, that they were simply faking it. That is insufficient to survive summary judgment. *See Lexington Ins. Co.*, 423 F.3d at 333.

Even when considering the record in its entirety, the evidence for retaliation is quite simply lacking. "When an employer retaliates, knowledge always precedes action. To survive summary judgment, a plaintiff must present evidence at least suggesting that the decisionmaker knew of the protected activity *before* taking the adverse action." *Giuseffi*, 810 F. App'x at 101 (emphasis in

original). No such evidence is present in this case. While Plaintiff may have a long history of filing EEO complaints with the DoDEA, there is nothing in the record to suggest that Dr. Knight or Dr. Villagomez had any knowledge of them. "One cannot retaliate without first knowing that the target engaged in protected activity." *Id.* In the absence of evidence linking her protected activity to the decision not to interview her, Plaintiff's retaliation claim is rendered conjectural, and it is thus incapable of withstanding summary judgment.[3]

## VI.    CONCLUSION

For all of the reasons articulated above, the DoD's Motion for Summary Judgment is granted.

Dated: March 31, 2025

KAREN M. WILLIAMS<br>
U.S. DISTRICT COURT JUDGE

---

[3] Separately, the Court notes that a portion of Plaintiff's Opposition to the DoD's Motion appears to be styled as a second amended complaint, in which she attempts to name additional defendants and assert a litany of new claims. However, it is well settled that plaintiffs may not amend their pleadings through briefs in opposition to summary judgment. *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008). Plaintiff's *pro se* status does not exempt her from that prohibition. *See, e.g., Kareem v. PHH Mortg. Corp.*, No. 20-7846, 2023 WL 8520758, at *5 (D.N.J. Dec. 8, 2023).